IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 DEC 16 PM 4:46

ISIS BRANTLEY and ISIS ORNAMENTATIONS
AND NATURAL HAIR CARE CONSULTANT
d/b/a The Institute of Ancestral Braiding,
                              Plaintiffs,

-vs-                                                   Case No. A-13-CA-872-SS

WILLIAM H. KUNTZ, JR. in his official capacity
as Executive Director of the Texas Department of
Licensing and Regulation; MIKE ARISMENDEZ
in his official capacity as Chair of the Texas
Department of Licensing and Regulation; LUANN
ROBERTS MORGAN in her official capacity as
Vice-Chair of the Texas Department of Licensing
and Regulation; and FRED N. MOSES,
CATHERINE RODEWALD, DEBORAH
YURCO, RAVI SHAH, and THOMAS F.
BUTLER in their official capacities as members of
the Texas Department of Licensing and
Regulation,
                              Defendants.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Partial Motion to Dismiss [#3], Plaintiffs' Response [#5], and Defendants' Reply [#6]; and Plaintiffs' Motion for Leave to File Sur-reply [#7], and Defendants' Response [#8]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.



## Background

In this case, Plaintiffs Isis Brantley and her business, Isis Ornamentations and Natural Hair Care Consultant d/b/a The Institute for Ancestral Braiding, raise constitutional challenges to the State of Texas's regulation of hair braiders. Specifically, Brantley alleges Texas's barber instructor licensing scheme, spread across various statutory provisions and regulations,[1] is unconstitutional as applied and violative of (1) the Due Process Clause of the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) the Privileges or Immunities Clause of the Fourteenth Amendment. Defendants are individuals within the Texas Department of Licensing and Regulation, the state agency charged with overseeing businesses offering barbering services. Defendants now move to dismiss Brantley's privileges or immunities and equal protection claims.

### A.    Texas's Regulatory Scheme

Brantley's "African hair braiding" business is regulated by Texas statutes governing the barbering profession generally. The definition of "barbering" covers a variety of services, including hair cutting, shaving, nail treatments, and facial care. TEX. OCC. CODE § 1601.002. Brantley's hair braiding services fall within the portion of the definition directed at "braiding a person's hair, trimming hair extensions only as applicable to the braiding process, and attaching commercial hair only by braiding and without the use of chemicals or adhesives." *Id.* § 1601.002(1)(K). Thus, although Brantley's Complaint operates from the premise "[b]raiders are not barbers," Texas law currently defines them as such. Compl. [#1] ¶ 2.

---

[1] Brantley's challenge encompasses the following provisions: TEX. OCC. CODE §§ 1601.253–.254 and 1601.351–.353; 16 TEX. ADMIN. CODE §§ 82.20(a), (c), (d), (m), 82.21, 82.23, 82.51, 82.72, and 82.1202(a)–(d).

In Texas, barbers cannot practice their trade without a certificate, license, or permit. TEX. OCC. CODE § 1601.251(a) ("A person may not perform or offer or attempt to perform any act of barbering unless the person holds an appropriate certificate, license, or permit."). Individuals seeking to braid hair for pay may obtain a "Hair Braiding Speciality Certificate of Registration,"[2] a credential which allows an individual to "perform only barbering as defined by Section 1601.002(1)(K)." *Id.* § 1601.259(a). In order to obtain such a certificate, a person must be at least seventeen years old and complete an approved training program. *Id.* § 1601.259(b). The training program consists of thirty-five hours of instruction across a range of topics, including technical skills, health and safety law and rules, and hair analysis and scalp care, with no final examination. 16 TEX. ADMIN. CODE §§ 82.20(h), .120(k).[3]

Individuals who have obtained hair braiding certificates may continue their training and serve as hair braiding instructors, enabling them to teach courses satisfying the regulatory standards. The first teaching option is the Barber Instructor License. TEX. OCC. CODE § 1601.254. This license requires an individual to be a "Class A barber"[4] and either complete a 750-hour course in a barber school or have one year of work experience as a licensed Class A barber and have completed alternative training focused on pedagogical methods (e.g., fifteen hours of collegiate education courses in education). *Id.* The second option is the Hair Braiding Specialty Instructor License. This

---

[2] The parties refer to this credential as a "license," but the statute and regulations use the word "certificate."

[3] There is also a distinct "hair braiding specialty certificate" available under the cosmetology regulations, rather than the barbering regulations. 16 TEX. ADMIN. CODE § 83.20(e). This certificate requires completion of a similar thirty-five hour curriculum. *Id.* § 83.120(b).

[4] To become a Class A barber, an individual must be at least sixteen years old and pass both written and practical examinations after completing at least 900 curriculum hours of course work. TEX. OCC. CODE § 1601.253; 16 TEX. ADMIN. CODE § 82.21(b).

license requires a valid specialty certificate and similar course work (or a combination of course work and work experience).[5] 16 TEX. ADMIN. CODE §§ 82.20(m), 82.120(c).

### B. Brantley's Hair Braiding Activities

Brantley owns and operates a sole proprietorship in Dallas, Texas. She holds a Hair Braiding Specialty Certificate, and is therefore authorized to braid hair for compensation. She does not hold either instructor license, and is not licensed as a Class A barber. Brantley has, in the past, provided hair braiding instruction at her business, and charged her students for the classes. However, because Brantley is not licensed as an instructor and because she does not operate a registered barber school,[6] her students cannot use her classes to satisfy their thirty-five hour course work requirement. Brantley has also taught as a "guest instructor"[7] at the Texas Barber Institute, a registered barber school. There, she has taught courses satisfying the thirty-five hour hair braiding curriculum.

## Analysis

### I.   Motion to Dismiss—Rule 12(b)(6)—Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

---

[5] The options include: (1) completing a 750-hour course in barber school, or (2) combining one year of work experience in the specialty with either (a) a 500-hour course in barber school, (b) fifteen semester hours of collegiate education courses within the last ten years, or (c) a college degree in education. 16 TEX. ADMIN. CODE § 82.20(m)(5).

[6] Texas also regulates what may qualify as a barber school. Requirements include, for example, a building with "at least 2,000 square feet of floor space, including classroom and practical areas, covered in a hard-surface floor-covering of tile or other suitable material," if the school is located in a municipality with a population exceeding 50,000. TEX. OCC. CODE § 1601.353.

[7] The "guest instructor" role is a mysterious creature. To the Court's knowledge, neither the Texas Occupation Code nor the relevant regulations provide any definition or description of it. Defendants claim guest instructors "are not defined by rule or statute, but are instead the product of a policy decision that allows those with expertise in the area of hair braiding to avoid obtaining a full barber instructor license and still teach the limited topic of hair braiding in a licensed barber school." Def.'s Reply [#6], at 4.

motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**II.     Application**

**A.      Privileges or Immunities Clause**

Brantley concedes her challenge based on the Privileges or Immunities Clause is foreclosed by the United States Supreme Court's holding in the *Slaughter-House Cases*, 83 U.S. 36 (1872). Pl.'s Resp. [#5], at 13 ("There can be little dispute that for the time being the Supreme Court's decision in the *Slaughter-House Cases* forecloses this claim . . . ."). Brantley merely seeks to preserve the issue for appellate review. Accordingly, the Court will GRANT Defendants' motion and dismiss the privileges or immunities claim.

**B.      Equal Protection Clause**

To avoid running afoul of the Equal Protection Clause, "all persons similarly situated must be treated alike." *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). For equal protection analysis to be triggered, therefore, the challenged government action must classify or distinguish between two groups. *Id.* "Unless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988).

Brantley presents two different theories under the equal protection umbrella. First, Brantley contends Texas is arbitrarily treating hair braiders differently from "guest instructors" by allowing guest instructors to teach the qualifying 35-hour licensing curriculum at an approved barber school, but requiring hair braiders to obtain a barber license and register a barber school to teach the identical

curriculum at their own place of business.[8] Second, Brantley argues Texas's regulatory scheme treats hair braiders the same as barbers, despite significant differences in those professions. In other words, Texas treats two dissimilar groups identically. Defendants argue both theories fail to state an equal protection claim.

Brantley's first theory is ill-suited as an equal protection claim. Though Brantley phrases it as a distinction between "hair braiding instructors" and "guest instructors," her allegations reveal those two classifications, as she uses the terms, are one and the same. Brantley views herself as a "hair braiding instructor" when teaching in her own business. However, because Brantley holds no instructor license of any kind, under Texas law she is not an instructor. Similarly, Brantley admits guest instructors are not required to hold instructor licenses. Thus, the only difference between Brantley's alleged groups is the barber school requirement. If Brantley teaches her class in a barber school, she qualifies as a guest instructor and her course satisfies the 35-hour curriculum. If she teaches the same class in her business, which is not a barber school, the course does not satisfy the curriculum. Texas's requirement all barbering courses be taught in a registered barber school is universally applied to all instructors, regardless of their form. Brantley is thus being treated exactly the same as every other hair braiding instructor in the state: she must teach at a registered school—whether as a Class A barber instructor, a specialty license instructor, or a guest instructor—for her course to satisfy the regulatory requirements.

---

[8] In making this claim, Brantley ignores the alternative instructor licensing option, the Specialty Hair Braiding Instructor License.

Note this is not a "similarly situated" problem, which the parties' motions focus on. The Court can assume (for purposes of this argument) guest instructors and "Brantley-style" instructors[9] are similarly situated. Brantley, who has served in both roles, demonstrates the two groups are essentially identical. The *only* difference between a guest instructor and a Brantley-style instructor is *where* they teach: guest instructors teach in registered barber schools, Brantley-style instructors teach elsewhere. Thus, Brantley's claim is merely an attempt to challenge the rationality of a uniformly applied Texas rule which does not distinguish between any groups, and therefore is not an equal protection claim. *See Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) ("[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.").

Brantley's second equal protection theory fares no better. In what is essentially a reverse equal protection claim, Brantley faults Texas for *not* treating two groups—hair braiders and barbers—differently. Brantley thus admits this claim is *not* a situation in which similarly situated groups are being treated differently. Instead, Brantley claims two dissimilar groups are being treated similarly without justification. Such allegations do not state an equal protection claim. *Rolf*, 77 F.3d at 828; *see also Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) ("[E]qual protection only applies when the state treats two groups, or individuals, differently.").

In support of her second theory, Brantley relies on a single line of dicta from *Jenness v. Fortson*, 403 U.S. 431, 442 (1971): "Sometimes the grossest discrimination can lie in treating things

---

[9] A Brantley-style instructor is someone, like Brantley, who does not hold any sort of instructor license but nevertheless teaches hair braiding.

that are different as though they were exactly alike, a truism well illustrated in [*Williams v. Rhodes*, 393 U.S. 23 (1968)]." However, as the Ninth Circuit observed when confronted with the same argument Brantley now advances, "in both *Jenness* and in *Williams*, the challenged laws imposed *different* requirements on two different groups, traditional and new political parties." *Merrifield v. Lockyer*, 547 F.3d 978, 985 (9th Cir. 2008). This view is consistent with longstanding views of equal protection doctrine, and conforms to the Fifth Circuit's restatement as well. *See Rolf*, 77 F.3d at 828 (reciting the basic requirement imposed by the doctrine: "all persons similarly situated must be treated alike"). To the extent a Sixth Circuit case cited by Brantley holds otherwise, this Court respectfully declines to follow the Sixth Circuit and hews instead to the well trodden path carved by binding Fifth Circuit precedent. *See Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) (affirming district court's injunction of statute on equal protection and due process grounds); *but see Merrifield*, 547 F.3d at 985 (reading *Craigmiles* as a due process case despite inclusion of equal protection language).

## Conclusion

Brantley's privileges or immunities claim is foreclosed by Supreme Court precedent, and must be dismissed. Brantley's equal protection claims are not equal protection claims at all, but are merely strained attempts to reframe her due process arguments. Those claims must be dismissed as well. Defendants have not challenged Brantley's due process claim, and this suit therefore moves forward on those grounds alone.

Accordingly,

IT IS ORDERED that Defendants' Partial Motion to Dismiss [#3] is GRANTED;

IT IS FINALLY ORDERED that Plaintiffs' Motion for Leave to File Sur-reply [#7] is GRANTED.

SIGNED this the 16th day of December 2013.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE